[Criminal No. 561. Filed May 1, 1924.]

[225 Pac. 482.]

# GEORGE W. HARDING, Appellant, v. STATE OF ARIZONA, Respondent.

1. HOMICIDE—INSTRUCTION ON PEACE OFFICER'S DUTY NOT TO INFLICT BODILY HARM WHEN ARRESTING MISDEMEANANT HELD NOT ERROR. Notwithstanding that, under Pen. Code 1913, § 854, peace officers may, without warrant, make arrests for offenses committed in their presence, in prosecution of officer for killing drunken automobile driver guilty, under 'Civ. Code 1913, paragraph 5134, of misdemeanor only, it was not error to instruct that it was his duty not to inflict bodily harm or death to effect arrest.

2. CRIMINAL LAW—INSTRUCTION ON REASONABLE DOUBT HELD PROPER. Instruction that if jury believed, beyond reasonable doubt, that defendant shot and killed deceased in manner and form referred to in indictment, to return verdict of guilty of manslaughter, and unless they so believed, to return verdict of not guilty, *held* proper.

---

1. Homicide by peace officer in attempting to enforce his commands against innocent persons, see note in L. R. A. 1918D, 379.

1. Right of officer to kill misdemeanant in order to effectuate arrest, see note in 4 Ann. Cas. 760. See, also, 13 R. C. L. 874.

2. See 14 R. C. L. 728.

3. HOMICIDE — PEACE OFFICER KILLING DRIVER WHEN SHOOTING AT AUTOMOBILE TIRE HELD GUILTY OF "INVOLUNTARY MAN-SLAUGHTER." — Where peace officer, in attempting to arrest a drunken driver, shot at a tire to disable automobile, and killed driver, even though killing was unintentional, his act being unlawful, offense was, in view of Pen. Code 1913, §§ 175, 1046, involuntary manslaughter.

4. HOMICIDE — "MURDER" AND "MANSLAUGHTER" DISTINGUISHED—"INVOLUNTARY MANSLAUGHTER."—Distinguishing characteristic between "murder" and "manslaughter" is that malice is not element of latter, and difference between "voluntary" and "involuntary manslaughter" is that former is intentional, and latter unintentional.

5. HOMICIDE—INDICTMENT AND INFORMATION FOR MANSLAUGHTER HELD SUFFICIENT TO CHARGE INVOLUNTARY MANSLAUGHTER.—Since both voluntary and involuntary manslaughter are punished alike, and, in voluntary manslaughter, accused always intends what he does, and in involuntary, presumption is that he intended to kill, indictment of peace officer for killing drunken automobile driver when attempting to arrest him, that charged manslaughter only was sufficient to charge involuntary manslaughter.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Carl Davis and Mr. J. C. Niles, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. A. R. Lynch, Mr. Earl Anderson, and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—George W. Harding, the appellant, appeals from a judgment of conviction of involuntary manslaughter.

3. See 13 R. C. L. 784.

4. Distinction between different degrees of crime in negligent homicide, notes, 61 L. R. A. 277; 63 L. R. A. 392. See, also, 13 R. C. L. 756.

5. See 13 R. C. L. 896.

See 16 C. J. 990; 29 C. J. 1123, 1128, 1149, 1152; 30 C. J. 117, 366.

The essential and material facts are: Appellant, a police officer of the city of Phoenix, was on duty the night of September 10, 1922, and while at the intersection of Hadley Street and South Central Avenue in said city, at about 11:30 o'clock, he saw a stripped Ford automobile traveling from the south along Central Avenue in a reckless manner, zigzagging from one side of the avenue to the other, the occupants shouting. When the automobile was something like a block from appellant he began signaling the occupants, with a flash light, to stop, but this seemed to have no effect. He then took two steps into the avenue from the curb line, still signaling them to stop, but they came on and, when within thirty or forty feet of appellant, turned their lights right towards him. Appellant shouted "halt" a couple times, and thinking they would run over him, jumped back on to the curb. They went on. After proceeding northerly along Central Avenue to the track of the Arizona Eastern Railroad, the auto turned around and came down the avenue zigzagging from one side thereof to the other, and traveling in a reckless way. When appellant saw them coming he again stepped into the avenue and signaled them to stop and, as before, they turned the lights towards appellant and passed very close to him. After they had passed, he, using his own words, "fired at the left hind casing of this stripped-down Ford."

The occupants of the car were Ray Colvin, who was driving it, and Liebourne Goree, who occupied the seat beside Ray. The appellant's aim was poor, or else the bullet hit the cement pavement and ricocheted into the body of Ray—most likely the latter as the bullet ranged upward from where it entered his back. Ray Colvin died the next day, as the result of this gunshot wound.

The description of the conduct of the occupants of the Ford car, and of what appellant did, is as

the appellant himself told it, as a witness in his own behalf, and, of course, is as favorable to him as it can be stated. The testimony of the witnesses for the prosecution showing, or tending to show, facts at variance with appellant's statement are not set out.

The evidence showed deceased and his companion had had a drink, or some drinks, and were more or less intoxicated. The speed at which they were traveling was variously estimated to be from 15 to 40 miles per hour.

There are five assignments of error. The first is to the giving of the following instruction:

"It was the duty of this officer, under the facts as disclosed to you, to arrest the deceased. It was not necessarily his duty to arrest him immediately. It was his duty, also, not to inflict bodily harm or death upon the deceased, in order to effect the arrest. It is better that Ray Colvin should escape arrest than to cause injury or death to be inflicted for a misdemeanor."

The second is likewise to an instruction worded as follows:

"Gentlemen of the jury, if you believe, beyond a reasonable doubt, that on or about the 10th day of September, 1922, in this county and state, that the defendant did shoot and kill the deceased, Ray Colvin, in the manner and form referred to in this indictment which I have read to you, you should return a verdict of guilty of the crime of manslaughter; and unless you do so believe beyond a reasonable doubt, you should return a verdict of not guilty."

The third, fourth and fifth assignments are that the verdict and judgment are not sustained by the law nor the evidence. We will consider these assignments in the order above given.

It is quite clear that the question to be determined involves the power and right of a peace officer to make arrests. Phoenix being an incorporated city, the speed limit therein, where the territory is closely

built, is 10 miles, and elsewhere 15 miles per hour. Paragraph 5134, Civil Code 1913. And since the deceased was exceeding these limits, he was guilty of a misdemeanor. Also, if he was intoxicated, he was guilty of a misdemeanor. Id.

Under section 854 of the Penal Code, a peace officer is authorized, either with or without a warrant, to make arrests of persons committing, or attempting to commit, a public offense in his presence. Since the deceased was, at the time appellant shot him, actually committing a misdemeanor, the appellant under the law had a right to arrest him, but the question is, did he, under the facts, have a right to shoot him? It must be admitted that there is a wide difference between the right to arrest a misdemeanant and to kill him. In *Willie* v. *State,* 19 Ariz. 346, L. R. A. 1918D, 373, 170 Pac. 869, we quoted with approval, from *Petrie* v. *Cartwright,* 114 Ky. 103, 102 Am. St. Rep. 274, 59 L. R. A. 720, 70 S. W. 297, the following language:

"The notion that a peace officer may, in all cases, shoot one who flees from him when about to be arrested is unfounded. Officers have no such power, except in cases of felony, and there as a last resort, after all other means have failed. It is never allowed where the offense is only a misdemeanor."

This is practically the universal rule. 5 C. J. 426, section 62, states it thus:

"Except in self-defense, an officer has no right to proceed to the extremity of shedding blood in arresting, or in preventing the escape of one whom he has arrested, for an offense less than felony, even though the offender cannot be taken otherwise, a distinction being recognized in this respect between arrests for misdemeanors and arrests for felonies."

In *State* v. *Sigman,* 106 N. C. 728, 11 S. E. 520, it is said:

"An officer who kills a person charged with a misdemeanor, while fleeing from him, is guilty of manslaughter, at least."

The reason for limiting the powers of a peace officer in making an arrest of a person committing, or attempting to commit, a public offense of the grade of misdemeanor in his presence is that organized society will suffer less by the temporary escape of such person than it would if the officer should be permitted to take his life, or inflict upon him great bodily harm, to prevent his escape. Most of the acts graded as misdemeanors have no element of moral turpitude, and are offenses simply because the public policy, through the law-making body, has so decreed. But even when the act is *malum in se,* and is graded as a misdemeanor, it is not thought to deserve death at the hands of an arresting officer simply because the offender seeks to avoid arrest by running away. When the offense is bad simply because prohibited, much less should the officer assume to take the offender's life if he disregards orders, and fails to stop when commanded to do so, but keeps on going. Persons charged with petty offenses do not usually run very far nor hide out very long, and if they do not later seek the officer, and surrender to him, it is ordinarily easy enough for the officer to find them and arrest them without bloodshed. But, whether such offenders are ever arrested or not, no peace officer has any right to shoot them because they do not halt when told to do so—"the theory of the law being that it is better that a misdemeanant escape than that human life be taken." *United States* v. *Clark* (C. C.), 31 Fed. 710. In *Thomas* v. *Kinkead,* 55 Ark. 502, 29 Am. St. Rep. 68, 15 L. R. A. 558, 18 S. W. 854, the court was considering the power of a peace officer to rearrest an escaped misdemeanant, and concluded that it was the same and no greater than in making an

original arrest. In arguing the question, the court used this very pertinent language:

"And it would ill become the 'majesty' of the law to sacrifice a human life to avoid a failure of justice, in the case of a petty offender who is often brought into court without arrest, and dismissed with a nominal fine. It is admitted that an officer cannot lawfully kill one who merely flees to avoid arrest for a misdemeanor, although it may appear that he can never be taken otherwise. If he runs, then, before the officer has laid his hands upon him with words of arrest, he may do so without danger to his life."

See, also, 1 Michie on Homicide, page 257, section 72.

We conclude that the first instruction complained of was as favorable to the appellant as he could have asked. It was a fair statement of the law. The same instruction in *Robertson* v. *Territory,* 13 Ariz. 10, 108 Pac. 217, under a somewhat different state of facts, was held to be correct.

The second instruction of which complaint is made is the general one the courts always give. In effect, it advised the jury that they must find, beyond a reasonable doubt, all the allegations of the indictment to be true before they should return a verdict of guilty.

Under the third proposition, that the verdict is contrary to the law and the evidence, the contention of the appellant is, as we understand it, that because he did not intend to shoot Ray Colvin, but simply to disable his automobile by puncturing one of the tires thereof, he is guilty of no offense. This contention implies an admission that had appellant aimed at the deceased instead of at the tire of his automobile and struck him, he would be guilty of some offense. Under the authorities we have cited above there can be no question that, in such case, appellant would have been guilty of manslaughter, at least.

Under our statutes, and under the decisions of the state from which we borrowed it:

"Every killing is unlawful unless expressly excused or justified by law. The homicide being shown, it is incumbent upon the defendant to prove circumstances in mitigation, excuse, or justification unless they arise out of the evidence produced against him." *People v. Searle*, 33 Cal. App. 228, 164 Pac. 819; section 1046, Penal Code; *Anderson v. Territory*, 9 Ariz. 50, 76 Pac. 636.

It is no excuse or justification to say that the shooting of Ray Colvin was unintentional. The offense with which the appellant was charged and convicted is defined by Penal Code, section 175, as follows:

"Manslaughter is the unlawful killing of a human being without malice; it is of two kinds:

"(1) Voluntary—Upon a sudden quarrel or heat of passion.

"(2) Involuntary—In the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

This definition is practically that of the common law. Wharton, in his work on Criminal Law (volume 1, § 426), defines the last kind as follows:

"Involuntary manslaughter, according to the old writers, is where death results unintentionally, so far as the defendant is concerned, from an unlawful act, on his part, not amounting to felony, or from a lawful act negligently performed. Hence it is involuntary manslaughter where the death of another occurs through the defendant's negligent use of dangerous agencies, and so where death incidentally but unintentionally results in the execution of a trespass."

The distinguishing characteristic between murder and manslaughter is that malice is not an element in the latter, and one of the differences between voluntary and involuntary manslaughter is that the former

is committed intentionally, and the latter unintentionally. The appellant's act, in discharging his pistol in the direction of the fleeing automobile, was unlawful because, as we have seen, a peace officer has no right to take the life of a petty offender in order to arrest him, and surely no one would contend that he was exercising at the time "due caution and circumspection." The act was grossly negligent.

In *Roberts* v. *United States,* 126 Fed. 897, 61 C. C. A. 427, the evidence tended to show that the defendant, who had been deputized to arrest the deceased, had fired his gun towards the ground with the sole intention of scaring the deceased, who was fleeing from him. The court held that the defendant was reckless and negligent in the use of means reasonably calculated to take the life of another, and affirmed the judgment of manslaughter.

In *State* v. *Vance,* 17 Iowa, 138, the defendant, hearing that his melon patch was being raided, seized a gun and proceeded to the place, and fired the gun with no intention to wound or kill, but for the purpose of scaring the trespassers. Unknown to the defendant, the gun was pointed at one of the trespassers, and its discharge caused his death. The court, affirming the judgment of manslaughter, said:

"If one fires a gun recklessly or heedlessly, he will not be excused, and his offense will be at least manslaughter, though the weapon was pointed in the range of deceased, by accident, with no design or intention to wound or kill. If the act is attended with probably mortally dangerous consequences to the deceased, or persons generally, and death should ensue, the crime is murder or manslaughter, depending upon the degree of deliberation."

*People* v. *Stubenvoll,* 62 Mich. 329, 28 N. W. 883, was a case where the accused fired his pistol in the air for the purpose of scaring a boy whom he was chasing down a highway, and the bullet took effect in

the boy's body, causing death. It was there held that a judgment of manslaughter was proper.

Although it is not assigned as error, there is some argument in appellant's brief challenging the sufficiency of the indictment to charge involuntary manslaughter. The indictment does not undertake to characterize the offense otherwise than manslaughter, and we think that is sufficient. The two kinds of manslaughter are punished alike. In voluntary manslaughter the accused always intends what he does. In involuntary manslaughter the presumption is that the accused intended to kill, as a man is always presumed to intend the natural and probable consequences of his acts. There is no suggestion that the indictment did not properly charge manslaughter as such. That, we think, was all that was necessary.

We have treated this case upon the assumption that the evidence clearly showed the deceased saw the appellant and his signals, and understood he was expected to stop. As a matter of fact, the surviving occupant of the stripped Ford testified he did not see the appellant signaling the car, nor hear him say anything to the occupants. Should the jury have believed this testimony, it would place the appellant in a more unenviable light than if the deceased had seen and understood his signals. However, viewing the evidence as it came from the lips of the appellant himself, it fully sustains the verdict.

Finding the record free from error, the judgment of the lower court is affirmed.

McALISTER, C. J., and LYMAN, J., concur.