[Civil No. 4048. Filed December 5, 1938.]

[85 Pac. (2d) 49.]

F. H. STAPLETON, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. George D. Locke, for Petitioner.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Special Assistant, and Mr. W. E. Polley, Assistant, for Respondent.

LOCKWOOD, J.—F. H. Stapleton, hereinafter called petitioner, brought this original proceeding for a writ of *mandamus* against Ana Frohmiller, state auditor of the state of Arizona, hereinafter called respondent, asking that she be compelled to issue to petitioner certain salary warrants. The facts of the case are in nowise in dispute and may be stated as follows:

The legislature of Arizona, at its first special session in 1936, adopted chapter 13, commonly known as the "Unemployment Compensation Act of 1936," the material portions of which read as follows:

"Sec. 10. Unemployment Compensation Commission. (a) Organization. There is hereby created a commission of three members to be known as the Unemployment Compensation Commission of Arizona.

The members of the commission shall be appointed by the Governor and shall hold office co-terminus with the term of the Governor. . . .

"(c) Divisions. The commission shall establish and supervise the conduct of two coordinate divisions: The Arizona State Employment Service Division created pursuant to Section 12 of this Act, and the Unemployment Compensation Division. Each division shall be responsible for the discharge of its distinctive functions. Each division shall be a separate administrative unit with respect to personnel, budget, and duties, except insofar as the commission may find that such separation is impracticable. The commission is authorized to appoint, fix the compensation of, and prescribe the duties of the director of the Unemployment Compensation Division, provided that such appointment shall be made on a nonpartisan merit basis, in accordance with the provisions of this Act relating to personnel.

"Sec. 11. Administration. (a) Duties and powers of commission. It shall be the duty of the commission to administer this Act; and it shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as it deems necessary or suitable to that end. . . .

"(d) Personnel. Subject to other provisions of this Act, the commission is authorized to appoint, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other persons as may be necessary in the performance of its duties. . . .

"Sec. 12. Employment Service. (a) Establishment and functions. The commission shall create a division to be known as the Arizona State Employment Service which shall establish and maintain free public employment offices in such number and in such places as may be necessary for the proper administration of this Act and for the purpose of performing such duties as are within the purview of the Act of Congress entitled 'an Act to provide for the establishment of a national employment system and for

co-operation with the States in the promotion of such system, and for other purposes,' approved June 6, 1933, (48 Stat. 113, U. S. Code, Title 29, Section 49 (c) as amended.) The said division shall be administered by a full-time salaried director, who shall be charged with the duty to co-operate with any official or agency of the United States having powers or duties under the provisions of the said Act of Congress, as amended, and to do and perform all things necessary to secure to this State the benefits of the said Act of Congress as amended, in the promotion and maintenance of a system of public employment offices. . . . ''

The commission established by section 10, *supra,* organized and thereafter adopted the following resolution:

''Whereas, the Arizona Unemployment Compensation Commission is desirous of securing an efficient and coordinated administration of the responsibilities imposed upon the commission by the laws of the State of Arizona, and . . .

''Whereas, The Commission deems that such co-ordination and administration can best be obtained by establishing and maintaining the position of Executive Director, and . . .

''It is therefore resolved, that there is hereby created the position of Executive Director to whom there is hereby delegated the following powers, duties and responsibilities:

''1. Under the administrative supervision and with the consent and advice of this Commission, to coordinate, direct and do any and all things necessary to supervise the conduct of the two coordinate divisions established by the Arizona Unemployment Compensation Law of 1936, as amended.

''2. The Commission designates the Executive Director as the supreme administrative officer of the Commission to which all heretofore created or designated executives and personnel shall be subordinate. The Executive Director shall submit to the Commission, in conformity with the merit plan adopted by the Commission, his recommendations as to the employment, retention, promotion, demotion and dismis-

sal of all personnel in the employment of this Commission.''

Petitioner was chosen as the executive director set forth in the resolution, and beginning with July 7, 1938, he duly performed the services required by the resolution, and presented to the auditor the claims for salary from July 15, 1938, to September 30, 1938, which are the base of this proceeding. The auditor refused to issue warrants therefor, claiming that petitioner was not qualified to hold the position of executive director aforesaid, for the reason that he was not a qualified elector of the state, and, therefore, could not hold such position by reason of section 15, article 7, of the Constitution of Arizona, and section 54, Revised Code 1928, which, respectively, read as follows:

''Section 15. Every person elected or appointed to any office of trust or profit under the authority of the State, or any political division or any municipality thereof, shall be a qualified elector of the political division or municipality in which said person shall be elected or appointed.''

''§ 54. General qualifications; payment to disqualified persons. Every officer must be of the age of twenty-one years and a citizen of the United States, and of this state. No person shall be eligible to any office, employment or service in any public institution in the state, or in any of the several counties thereof, of any kind or character, whether by election, appointment or contract, unless he be a citizen of the United States. Any board or person who shall allow, audit or pay any warrant or other certificate of indebtedness for services performed, to any person not so qualified, shall be liable for twice the amount so paid at the suit and in the name of any citizen of the county, if out of county funds, or at the suit and in the name of any citizen of the state, if out of state funds, which sum, when recovered, shall be paid into the fund from which originally drawn and paid.''

The matter was submitted to us on a stipulation of fact, which admits that petitioner at the time of his

appointment was a citizen of the United States, but was not a qualified elector of the state of Arizona, for the reason that he had resided in such state only since January 7, 1938.

It will be seen, on an examination of the constitutional provision and section of the code just cited, that an *officer* of the state of Arizona must be a qualified elector thereof, while a mere *employee* of the state need only be a citizen of the United States. The question, then, before us for determination is whether the position of executive director, to which petitioner was duly appointed, is an "office" within the meaning of the Constitution, or merely an "employment." In other words, was petitioner a public officer or merely a public employee? In the first case he is not entitled to the salary; in the second he is.

We have had before us at a previous time, in the case of *Winsor* v. *Hunt*, 29 Ariz. 504, 243 Pac. 407, a somewhat similar question. In that case if the position for the performance of whose duties the petitioner sought compensation was a public office, he was not qualified to hold it. If it were a mere employment, he was, and it, therefore, became necessary for us to determine the precise issue involved in the present case. We considered the matter very fully, and said (p. 518):

"This is a question of first impression in Arizona, but the same situation has frequently arisen in other states under similar constitutional provisions. There is no entirely satisfactory definition of a 'public officer' as distinct from an 'employee,' though there are many illustrations, and all the authorities recognize that the difference exists. We quote a few of the cases which discuss it. [Quoting cases.]

"We think that in 22 Ruling Case Law, 381, § 12, the chief elements of a 'public office' are well summed up. The specific position must be created by law; there must be certain definite duties imposed by law on the incumbent, and they must involve the exercise

of some portion of the sovereign power. A position which has these three elements is presumably an 'office,' while one which lacks any of them is a mere 'employment.' Taking these as the criteria, was plaintiff occupying an 'office'? We think it is obvious he was not. The act did not create his position, or indeed any particular position except that of the commissioner. There were no specific duties imposed by the statute upon any of the persons rendering 'clerical and stenographic assistance,' and, above all there was certainly no shadow of any of the sovereign power of the state vested in plaintiff. He was no more an 'officer' than any stenographer or clerk in the employ of the corporation commission, or gardener or janitor working about the capitol building; nay, not even so much so, for most of these last employments are specifically mentioned in the general appropriation bill, and their salaries annexed thereto and fixed, while under the act in question there was no provision as to salaries, either in detail or in gross, nor as to the number of clerks or stenographers. Whatever might be thought of the propriety of a member of the Legislature seeking and securing employment under the circumstances of this case, we think it plain that in no respect were his services to the Code commissioner rendered in a 'civil office of profit or trust,' and there was no constitutional inhibition forbidding his performing them.''

██ It will be seen from this that we held there were three elements requisite to a position being a public office, which are (a) the specific position must be created by law; (b) there must be certain definite duties imposed by law on the incumbent; and (c) they must involve the exercise of some portion of the sovereign power. How was the position of executive director created? How were its duties prescribed, and what, if any, portion of the sovereignty of the state did the director exercise?

The position was obviously created by a resolution of the commission and not by any legislative body, for while it might be said that the act, by implication,

provides for the creation of a position to be known as "director of the unemployment compensation division," and another which should be called "director of the state employment service," neither of these positions was the one to which petitioner was appointed. He was named to fill an entirely different one, to wit, that of "executive director" of all the activities of the commission. His duties were prescribed solely by a resolution of the commission, and were subject to change by it at any time. If the commission decided that the sole duty of the executive director was to mow the lawn in front of its office for a compensation of one dollar per year, it had the authority to so declare, and his only remedy, if he objected, would be to resign. It is true that the resolution gave him, so far as it was able to do so, complete power in the administration of the act, and . this would necessarily involve the exercise of many of the sovereign powers of the state, but this permission was strictly limited in that his duties could only be performed under the supervision and with the consent and advice of the commission. We think such powers were more similar to those of a mere agent whose authority may be revoked at any moment, and whose acts are those of his principal rather than the independent exercise of the sovereign prerogatives of the state by a public officer.

Counsel have cited to us for our consideration a number of cases. We have examined and compared them all with care. They agree substantially with the abstract test applied by us in *Winsor* v. *Hunt, supra,* but their conclusions as to whether the position in question in the particular case fell within or without that test are of little aid to us. We think the language of the court in *State* v. *Spaulding,* 102 Iowa 639, 72 N. W. 288, describes the situation better than any other we have found (p. 291):

" . . . Here we have a position created without authority of the legislature, which alone could authorize its creation. The lawmaking power never prescribed any duties, nor authorized any one else to prescribe them, for such an officer. No part of the sovereign functions of government was ever delegated by the legislature to the individual who might fill such place, and none of the usual requisites of an office were provided for by the legislature. But the controlling facts are that this treasurer was a creation of the commission, without authority of law, and presumably for their own convenience, and at all times subject absolutely to their control. They not only created the office, but they fixed its tenure, and the compensation to be paid the occupant. They might allow him to act, as they did, without taking any oath of office; and, being a creation of their own, they could require him to give bonds, or not, as they pleased. Having created the place and appointed the incumbent, they could at any time dispense with his services, and abolish the so-called office. Such a one is not a public officer. . . . In the case at bar the duties performed by the defendant do not indicate an office, rather than an employment. He was, as we have shown, entirely dependent for his place upon the will or caprice of the commission. The duties imposed upon him were not the result of the law, but the will of his superiors, the commission. He was the creation of it, to do its will, having no independent functions. . . . So a 'position the duties of which are undefined, and which can be changed at the will of the superior, . . . is not an office, but a mere employment, and the incumbent is not an officer, but a mere employé.' . . . "

After considering the matter fully, we are of the opinion that an "office," as distinct from an "employment," may be created only by the legislative branch of the government, either directly or by necessary implication, for such branch alone has the authority to make "law," and that any position which is established by the administrative department cannot be considered as an office within the meaning of

the Constitution, but rather as a mere employment. If, from the law, there can reasonably be gathered the conclusion that the legislature intended to establish a definite office with definite duties and powers, the language used is immaterial, but we think that an act which merely confers the power in an executive board or commission to appoint and to fix the compensation and duties of such assistants as it finds necessary to carry out the duties imposed upon it is far from creating any office whatever. We hold, therefore, that the position of executive director, to which petitioner was appointed, being created by a resolution of the commission merely, with its powers and duties fixed in the same manner, was not an office but a mere employment, and that petitioner was qualified to hold it.

The alternative writ heretofore issued is made peremptory.

McALISTER, C. J., and ROSS, J., concur.