278 P.2d 406

The STATE of Arizona, Appellee,

v.

Walter KURTZ and William Gorman,
Appellants.

No. 1060.

Supreme Court of Arizona.

Dec. 28, 1954.

Minne & Sorenson, by Francis J. Brown,
Phoenix, attorneys for appellant Gorman.

James H. Garcia, Phoenix, for appellant Kurtz.

Ross F. Jones, Atty. Gen., and William T. Birmingham, Asst. Atty. Gen., for appellee.

UDALL, Justice.

Defendants, Walter Kurtz and William Gorman, were jointly charged by an information filed in the superior court with obstructing a public officer, a felony. There was a trial before a jury, which resulted in separate verdicts of guilty, and from the judgment rendered thereon they have duly prosecuted a joint appeal to this court. The sentences imposed were one and one-half to three years in the state penitentiary at Florence, Arizona.

The sole assignment of error is that the trial court was mistaken, as a matter of law, in not granting their motion for a directed verdict at the close of the State's case. The legal question presented for our determination is whether duly appointed and acting city of Phoenix police officers, when privately paid and employed during off-duty hours, as special officers to maintain order and keep the peace, are "public officers" within the meaning of that term as used in the penal statute.

The facts, which must necessarily be based upon the State's evidence as neither defendant called witnesses or elected to testify, are:

At 9:00 p. m. on the night of July 4, 1953, Frederick Green, Earl Irving, and Lucien L. Luckett, city of Phoenix police officers, presented themselves, dressed in regulation uniform, for work at Riverside Ballroom— a dance pavilion within the Phoenix city limits—where they were employed by the ballroom operator to preserve order and protect his property while dances were in progress on the premises. It was the custom and policy to close such dances at 3:00 a. m.

Shortly after this hour in the early morning of July 5, 1953, when most, if not all, the dancing patrons had left the ballroom and while the officers heretofore named were waiting for the manager to pay them, their attention was called to a disturbance occurring outside the ballroom on their employer's premises. Upon their arrival at the scene they found a police car and two on-duty officers of the Phoenix police in the process of arresting two girls and placing them in the patrol car. A crowd of approximately a hundred persons had collected and some among them were shouting abusive language at the arresting officers. As the police car was about to depart defendant Walter Kurtz placed his head inside the car window on the right side, grabbed the door handle and in the presence of the women shouted vile, obscene and abusive language at the officers. Thereupon Officer Irving, who was standing within an arm's length of defendant Kurtz, placed him under arrest for using obscene language in the presence of women, which is a violation of Section 43–3001, A.C.A.1939 and Section 83, Chapter 29 of the 1951 Code of the

City of Phoenix. As Officers Green and Irving were escorting Kurtz to the ballroom office and were approximately forty feet from the entrance, Gorman, the other defendant, jumped upon Officer Irving's back, pulled him to the ground and kicked and struck him. At the same time Kurtz broke loose and hit Officer Green on the forehead and "kneed him" in the right leg as they fell to the ground. With the assistance of Officer Luckett and the free use of "black jacks or saps" both defendants were finally subdued and taken inside the dance hall. Additional police were called and the crowd, which was then attempting to break down the ballroom door and effect a release of defendants, was dispersed. Defendants were finally taken to jail in the paddy wagon. Later a criminal complaint was filed, and after a hearing was had the defendants were held to answer to the superior court.

The statute upon which this prosecution rests provides:

"Every person who wilfully resists, delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding five thousand dollars ($5,000), and imprisonment in the state prison not exceeding five (5) years." Section 43–3910, A.C.A.1939.

Defendants in the brief seek to justify their admitted resistance of the arresting officers upon the ground that Irving and Green were not at that time "public officers" discharging or attempting to discharge the duties of their office, but were stripped of their official character and capacity and relegated to the status of being servants of the proprietor by whom they were employed as "bouncers" or "watchmen", and therefore they urge the motion for a directed verdict should have been granted.

■ At the outset it should be noted that we have heretofore held that members of an incorporated city police force are "Public Officers", Russell v. Glascow, 63 Ariz. 310, 162 P.2d 129, nor can it be questioned that they are such within the meaning of Section 43–3910, A.C.A.1939, supra. See Tomaris v. State, 71 Ariz. 147, 224 P.2d 209. Cf. Stapleton v. Frohmiller, 53 Ariz. 11, 85 P.2d 49; Section 12–101 et seq., A.C.A.1939. As heretofore stated the question we must decide is whether officers when engaged in off-duty private employment, as in the instant case, thereby lose their official status to the extent that their acts necessarily become those of private citizens.

While there are cases dealing with analogous problems, we have not been cited to or found a case dealing with the specific question here presented. In the tort action of Neallus v. Hutchinson Amusement Co., 126 Me. 469, 139 A. 671, 672, 55 A.L.R. 1191, the question was whether one who was appointed a special policeman at defendant's theater at its request and whose serv-

ices were paid by it, was acting as its agent or employee in committing an alleged assault. The court said:

"The decisions hold generally that such officers act sometimes as officers and sometimes as servants of the person employing them; that they are not, although paid for all their services by the persons at whose instance they are appointed, servants of such persons in respect to all the acts they perform by virtue of their offices but only in respect to services rendered to these persons, such as protecting and preserving their property or maintaining order on their premises; that the line of distinction, sometimes hard to recognize under the circumstances of a given case, marks the point at which the act ceases to be one of service to the employer and becomes one of vindication of public right and justice, of the apprehension or punishment of a wrongdoer, not for the injury done to the employer but to the public at large; * * *"

While the officers in the instant case, as duly appointed and acting regular members of the Phoenix police force, cannot technically be termed "special officers", nevertheless the statement set forth above aptly describes their legal status.

Let us apply this test: were the officers acting in "vindication of public right and justice" or were they merely performing acts of service to their private employer?

It manifestly appears from the record that at the time of the incident in question the manager of the ballroom had no right of supervision over these officers nor did he attempt any such control. Furthermore, it was well recognized by both the management and the officers that they were to respond forthwith to any emergency call made upon them by the police department.

The evidence is undisputed that Officers Irving, Green and Luckett had, in obedience to regulations (Police Manual 1600.8), obtained from the Chief of Police written authorization and approval to accept such off-time employment as they were engaged in on the night in question. As to his officers' private employment Chief Thomas testified:

"We do encourage it in this way; we have many places who (sic) require more that the normal amount of police supervision, and inasmuch as we do not have sufficient man power to keep officers there at all times when those establishments are operating—they are usually ones that operate a limited time during the week, such as Saturday night or Monday night, or something like that—and we encourage our officers to work there on their off-duty time, and in fact encourage the management to hire regular police officers to work in those locations."

The Police Manual of the City of Phoenix (with which these officers showed thorough

familiarity), in Section 1600.5 entitled "Off Duty Service Requirements", expressly provides in part:

"Officers shall have regular hours assigned to them for active duty, and when not so employed shall be considered 'off duty'. They shall, however, be subject to duty as needed. When 'off duty' they shall be responsible for taking proper police action on any matter coming to their attention at any time. This rule shall not apply to minor traffic violations * * *."

Under these circumstances it is clear that in arresting defendant Kurtz the officers were not performing mere acts of service for their private employer but were acting in vindication of the public right in apprehending a wrongdoer. The courts will not condone attacks upon uniformed officers or attempts to obstruct or interfere with them in discharge of their duties. It would create an intolerable situation if such actions as shown here were excused on the theory that the officers were perchance "off duty".

As it plainly appears that defendant Kurtz committed a misdemeanor in the immediate presence of the arresting officer, the case of Platt v. Greenwood, 50 Ariz. 158, 69 P.2d 1032, so strongly relied upon by defendants, is not in point. Officer Irving being fully clothed with all the authority of law, the arrest of Kurtz was valid and the evidence fully justified the jury's verdict finding both defendants guilty of obstructing public officers in the discharge of their duties.

Judgment affirmed.

PHELPS, C. J., and STANFORD, LA PRADE, and WINDES, JJ., concurring.