431 P.2d 681

**STATE of Arizona, Appellee,**
**v.**
**Adolph Moreno ARCE, Appellant.**
**No. 1 CA–CR 117.**

Court of Appeals of Arizona.

Sept. 13, 1967.

Rehearing Denied Oct. 11, 1967.

Review Denied Nov. 14, 1967.

Darrell F. Smith, Atty. Gen., by LeRoy R. Park, Asst. Atty. Gen., for appellee.

Ross Anderson, Phoenix, for appellant.

STEVENS, Judge.

The jury returned its verdict finding Adolph Mereno Arce "GUILTY OF RESISTING ARREST, OBSTRUCTING JUSTICE, as charged in the Information". The defendant came on for sentence on 27 June 1966. The minute entry of that date reads, in part, as follows:

"This is the time regularly set for imposition of sentence. * * * The Defendant is present with counsel, Robert Hunter.

"IT IS ORDERED denying Defendant's Motion for New Trial.

"IT IS THE JUDGMENT OF THIS COURT that you, ADOLPH MORENO ARCE, are Guilty of Resisting Arrest, Obstructing Justice, a felony * * * and no legal cause appearing to the Court,

"IT IS THE SENTENCE OF THIS COURT that you, ADOLPH MORENO ARCE, be incarcerated in the Arizona State Penitentiary, Florence, Arizona, for a period of not less than two (2) year (sic) nor more than four (4) years, said sentence to commence as of this date. * * *"

On 19 July 1966, the trial court entered the following further minute entry:

"IT IS ORDERED Nunc Pro Tunc as of June 27, 1966, as follows:

"FURTHER ORDERED that said sentences are to be not less than 2 years nor more than 4 years on EACH COUNT, and terms are to run concurrently."

Formal written judgment of guilt and sentence was filed in the Office of the Clerk of the Superior Court on 27 July 1966. It recites that on 27 June 1966, the defendant and his attorney personally appeared before the court and that,

* * * 'The following judgment of guilt was then entered in the presence of the defendant:

"IT IS THE JUDGMENT of the court that the defendant ADOLPH MORENO ARCE is guilty of RESISTING ARREST, COUNT I AND OBSTRUCTING JUSTICE COURT II, FELONIES as charged in the (Information). * * *

"IT IS THE JUDGMENT AND SENTENCE OF THE COURT, that the defendant be incarcerated in the Arizona State Penitentiary at Florence, Arizona, for a period of not less than Two (2) years nor more than Four (4) years, said sentence to commence as of this date. * * *

"July 19, 1966—IT IS ORDERED Nunc Pro Tunc, as of June 27, 1966, as follows:

"FURTHER ORDERED that said sentences are to be not less than Two (2) years nor more than Four (4) years on EACH COUNT, and terms are to run concurrently."

The appeal questions the judgment and sentence and presents additional issues which were presented to the trial court prior to and during the trial.

The defendant was represented at his preliminary hearing and at the trial by court appointed counsel. A different court appointed counsel processed the appeal.

The events in question took place on 28 August 1965. The facts are not in dispute. The defendant testified at the trial. He stated that he had become 18 years of age on the preceding 22nd day of July; that he had completed one year of high school and he reviewed his employment record. He stated that on the date in question, a Saturday, he started drinking beer at about one o'clock in the afternoon and continued drinking until he attended a wedding at about five o'clock, at which time he changed to mixed drinks. He stated that he had no recollection of the events now in question because "I was drunk".

We turn to the testimony of the officers to complete the factual background. Captain Walker was a duly commissioned Reserve Captain of the Police Department of the City of Glendale, Arizona. On the evening of 28 August, he was on duty in uniform in an unmarked car equipped with red lights and a siren. At approximately 11:45 that evening he observed an automobile exceeding the speed limit and failing to stop at a stop sign. He followed the car with his red lights turned on. The car increased its speed and Walker turned on the siren. The car drove into a driveway on private property, stopped and the defendant emerged from the driver's side. A female passenger emerged from the right-hand side of the vehicle. Walker parked in the street; the red lights on the vehicle were left on; Walker dismounted from the car and called to the defendant to produce his driver's license. Walker had not then entered upon the private property and the two men were several feet apart. The defendant responded to Walker's request by cursing Walker, using foul language and stating, "Get out of here". Walker testified,

"I placed him under arrest. * * * by verbally advising him that he was under arrest for failing to sign the citation. * * * Well, at about that time he had taken off his shirt and thrown it on the ground and said he was going to kill me."

Walker stayed at the curb. The defendant stayed in the yard and advanced a few steps toward Walker. Neighbors began to gather. Walker radioed for aid and, shortly, police officers, who were full-time employees of the Police Department of the City of Glendale, arrived. The defendant's course of conduct continued. Three officers advanced and manually, without the use of weapons restrained the defendant who fought them. It was difficult to place handcuffs on the defendant. It was necessary to tie the defendant's feet together with a belt to enable the officers to place him in the police car. At some time dur-

ing the scuffle, probably while the defendant was face down on the ground to facilitate the application of handcuffs, the defendant sustained slight injuries to his nose or mouth. These injuries bled to some extent. Before the defendant's feet were secured by the belt, he kicked one of the officers. To avoid receiving the blow in his groin, the officer shifted his body and the blow was received on the inner aspect of the thigh. After the defendant was placed in the police car, he kicked out one of the windows of the police car and two officers rode in the back seat with him to the police station. The defendant caused further problems at the police station verbally and by spitting upon people.

The defendant's testimony as to the injuries he sustained indicated that the injuries were minor. He further testified that on the following Monday morning, 30 August, he was taken to the City Court of the City of Glendale where he plead guilty to the traffic offenses of driving under the influence of intoxicating liquor, and reckless driving, and to the offense of illegal consumption of liquor by a minor. He was fined $300.00 which fine was paid by his parents.

That afternoon, after the liaison officer of the Glendale Police Department had conferred with the office of the County Attorney, a formal complaint was filed before the Justice of the Peace. Defense counsel was promptly appointed. Within a short time a preliminary hearing was held at which Walker was the only witness who testified. The defendant was bound over to the Superior Court where an Information was filed in the same language used in the complaint. The caption of the Information is as follows:

"INFORMATION FOR RESISTING ARREST, OBSTRUCTING JUSTICE"

The charging portion of the Information is as follows:

"In the name and by the authority of the State of Arizona

ADOLPH MORENO ARCE is accused this 16th day of September, 1965, by the County Attorney of Maricopa County, State of Arizona, by this information, of the crime of RESISTING ARREST, OBSTRUCTING JUSTICE, A FELONY committed as follows, to-wit:

"The said ADOLPH MORENO ARCE on or about the 28th day of August, 1965, and before the filing of this information at and in the County of Maricopa, State of Arizona, attempted, by means of a threat or violence, to deter or prevent a public officer from performing a duty imposed upon the officer by law, or wilfully resisted, delayed or obstructed a police officer in the performance of his duty; all in violation of Section 13–541, A.R.S.;"

The statute in question is one of ten sections in the Arizona Revised Statutes, brought together under the following heading:

"ARTICLE 29. OBSTRUCTING JUSTICE"

The particular section referred to in the Information and upon which the charge is based reads as follows:

"§ 13–541. Resisting, delaying, coercing or obstructing public officer; punishment

"A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty, where the punishment is not otherwise specifically prescribed, shall be punished by a fine not exceeding five thousand dollars and imprisonment in the state prison for not to exceed five years, or by imprisonment in the county jail for not to exceed one year."

The defendant strenuously urged in the Justice Court and in the Superior Court and he urges in this Court, that the Information is fatally defective. He bases this contention upon his view that the Information charges more than one offense in a single count.

Rule 115 of the Rules of Criminal Procedure, 17 A.R.S., specifies:

"Rule 115. Charging the offense

"A. The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by the common law or by a statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"B. The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

Criminal Rules 144, specifies:

"Rule 144. Surplusage

"Any allegation unnecessary under existing law or under the provisions of these Rules may, if contained in an indictment, information or bill of particulars, be disregarded as surplusage."

Criminal Rule 146, states in part:

"A. No indictment or information shall be invalid or insufficient for any one or more of the following defects merely:

\* \* \* \* \* \*

"4. That any uncertainty exists therein if it charges an offense in accordance with Rule 115."

In our opinion Section 13–541 defines but one offense, an offense which can be committed in one or more of several ways. The Information could have described the crime charged as "Obstructing Justice", these being the descriptive words used in the title to Article 29, or it could have been described as "obstructing a Public Officer". It is not unusual that an offense which has a descriptive name, can be committed in one or more ways or in a combination of several ways. Examples are forgery, A.R.S. Section 13–421, and rape, A.R.S. Section 13–611. Proof of any one or more or a combination of the ways specified in such a statute constitutes proof of the single offense. The words "Resisting Arrest" are surplusage in the information. We hold that one public offense was charged and that neither A.R.S. Section 13–1641 nor State v. Ballez, 102 Ariz. 174, 427 P.2d 125 (1967) is applicable.

It would have been better in the pleading to use the term "Public Officer" throughout the Information rather than specifying "Public Officer" in one portion of the Information and "Police Officer" in another portion of the Information. A police officer is a public officer. State v. Kurtz, 78 Ariz. 215, 278 P.2d 406 (1954). We hold that the Information was not defective.

Prior to the introduction of evidence, the defendant moved the court for an order striking the words "a felony" from the information and urges that it was error to deny the motion. We do not agree. In this instance the verdict did not determine the degree of the offense and even had the verdict recited "a felony" the verdict would not have been binding upon the trial judge as to the degree of the offense, as it is the province of the judge to make this determination at the time of sentence.

Prior to the exercise of the peremptory challenges, there were twenty-four jurors in the box, the number required for a felony trial, (Criminal Rule 225[2]); rather than eighteen jurors, the number required for a

misdemeanor trial. (Criminal Rule 225[3]). We find an absence of error in denying the motion to strike.

■ The defendant has consistently urged that there is no crime known as "Failure to Sign the Citation" and, therefore, that the arrest was an illegal arrest thereby making it legally possible for the defendant to resist to the full extent of his powers. We agree that failing to sign a citation is not a crime. We do not agree with the defendant's conclusions.

Walker was aware of three misdemeanor offenses committed in his presence at the time he stopped Arce's vehicle at the curb, these being speeding, failure to stop at a stop sign and reckless driving. As he observed the defendant's conduct he became aware that a fourth offense had been committed, namely, driving under the influence of intoxicating liquor. These being committed in his presence, he was then empowered to place the defendant under arrest without a warrant. A.R.S. 13–1403, at the time in question, provided in part as follows:

"§ 13–1403. Arrest by officer without warrant

"A peace officer may, without a warrant, arrest a person:

"1. When the person to be arrested has committed a * * * misdemeanor in his presence. If the arrest is for a misdemeanor, the arrest shall be made immediately or on fresh pursuit."

A.R.S. Section 13–1408, provides as follows:

"When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest, *unless the person to be arrested is then engaged in the commission of an offense, or is pursued immediately after its commission* or after an escape, or flees or forcibly resists before the officer has opportunity so to inform him, or when the giving of such information will imperil the arrest." (Emphasis supplied)

In Arizona, we use the Uniform Traffic Citation. A portion of our law in that connection is statutory and a portion is set forth in the "Rules of Procedure in Traffic Cases", 17 A.R.S., adopted by the Arizona Supreme Court pursuant to the rule making power vested in that Court by the Arizona Constitution. A.R.S. Section 28–1054 contains instructions to the officer in relation to an arrest for a traffic violation. In part, these instructions are as follows:

"* * * the arresting officer shall prepare in quadruplicate written notice to appear in court containing the name and address of the person, the license number of his vehicle, if any, the offense charged and the time and place when and where the person shall appear in court.

* * * * * *

"The arrested person in order to secure release as provided in this section, shall give his written promise so to appear in court by signing at least one copy of the written notice prepared by the arresting officer. The officer shall deliver a copy of the notice to the person promising to appear. Thereupon, the officer shall forthwith release the person arrested from custody."

It is noted that the statute requires, among other things, that the traffic citation shall set forth "the name and address of the person" who has committed the violation. It was this information which Walker sought to obtain when he asked the defendant for his driver's license. Walker did not know the defendant and, at the time in question, did not know that they were at the defendant's place of residence. The law does not require an officer to do a vain and useless act. Walker was not then required to prepare an incomplete traffic citation and tender the same to the defendant for his signature. It was then Walker's duty to arrest the defendant and take him into custody, a duty which was present and clear upon the defendant's show of belligerency. At that time the defendant

violated A.R.S. Section 13–541. Whether that act was a felony or a misdemeanor is a matter to be determined in the discretion of the trial judge. Under the statutory law, and under the circumstances, there was no duty on the part of Walker to inform the defendant as to the reason for the arrest. To say that the arrest was illegal because Walker stated that the defendant was being placed under arrest for failure to sign a traffic citation in place of stating, in substance, "You are under arrest and you will be released from arrest if you sign a traffic citation" is being hypertechnical under the state of facts before us.

 It is urged that the trial court committed error when it adjudged the defendant guilty of two counts and imposed two concurrent sentences. With this we agree. However, this agreement does not require a new trial or a new sentencing. The judgment of guilt and the sentence were complete on 27 June 1966. State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962), cert. den. 372 U.S. 920, 83 S.Ct. 735, 9 L.Ed.2d 726 (1963). The purported modification on 19 July was void. The defendant was absent. Criminal Rule 235. The defendant was not represented by counsel and the presence of counsel at the time of sentence is required. Leonard v. State, 101 Ariz. 42, 415 P.2d 570 (1966); Pina v. State, 100 Ariz. 47, 410 P.2d 658 (1966); Johnson v. State, 4 Ariz.App. 336, 420 P.2d 298 (1966); State v. Lindsay, 5 Ariz.App. 516, 428 P.2d 691 (1967).

The formal written judgment does not control in criminal cases as it does in civil cases. *Dowthard.* We hold that the judgment of guilt and sentence were complete on 27 June 1966 and that the words "Resisting Arrest" therein contained are surplusage. To clarify the record, the trial court is directed to strike from the minute entry judgment of 27 June 1966, the words "Resisting Arrest", to vacate the minute entry order of 19 July 1966, and to prepare an amended formal written judgment in conformity with this opinion.

It is urged that remarks of the Deputy County Attorney in his closing argument require a reversal of this cause. On request of the defendant, over the objections of the State, the trial court instructed the jury as follows:

"You are further instructed that it was the duty of this officer, under the facts as disclosed to you, to arrest the defendant. It was not necessarily his duty to arrest him immediately. It was his duty, also, not to inflict bodily harm upon the defendant in order to effect the arrest.

"You are further instructed that except in self-defense, an officer has no right to proceed to the extremity of shedding blood in arresting, or in preventing the escape of one whom he has arrested, for an offense less than a felony, even though the offender cannot be taken otherwise, a distinction being recognized in this respect between arrests for misdemeanors, and arrests for felonies."

The request for this instruction cited as authority the case of Harding v. State, 26 Ariz. 334, 225 P. 482 (1924).

During the closing argument the Deputy County Attorney referred to the instruction and the record revealed the following:

"The law the defense takes in citing it to you is from a case where I feel the officer was wrong.

"MR. HUNTER: Your Honor, I will object. You can't refer to cases, it is without the province of the Jury.

"MR. WAMACKS: You have read the opinion from the cases, I think the facts upon which that opinion is based is proper for the Jury.

"MR. HUNTER: Certainly not, Your Honor.

"THE COURT: Well, that's all right. Go ahead.

"MR. WAMACKS: This was a case of quite some time ago that a police officer in another part of our State suspected a commission of a crime by persons

in an automobile and he tried to stop this automobile. He tried several different ways over a short period of time and was unsuccessful and so finally he took out his service revolver and shot at the back wheel of the car. Well, apparently he wasn't a very good shot because he shot and killed the driver. He was charged with murder. In that case it was a misdemeanor offense and he did go to the point of taking out his service revolver and using it in an attempt to stop these people and from this comes the language that is better to let that car drive on down the road and find it later than it is to shed blood by killing him."

■ We agree that the better ruling would have been to sustain the objection. We are called upon to determine whether the ruling and the permitted argument were so prejudicial as to deprive the defendant of a fair trial and whether these remarks were a legitimate response to the argument of defense counsel. We quote a portion of that argument.

"The sad thing that I am reminded of is something in the nature of the news last Sunday night when a man speeding to the hospital with his wife who was having a baby was shot and killed by a police officer. It is unfortunate that these things happen in our society. I feel that a similar mistake happened by the police officers in this case. * * *

"The type of situation where the unfortunate father was shot and killed in California last week delivering his wife to the hospital. He was speeding, yes, but should blood be shed for this, as there is no question but what the defendant's blood was shed in this particular case?"

After reading the instruction the argument continued,

"Now, this is a philosophy, the whole philosophy of our system here. It is the law. The Court will read you the instructions *and this is what the Supreme Court of Arizona said* and it is certainly what's been violated in this case grossly." (Emphasis supplied)

In our opinion defense counsel went too far in his reference to the California incident. He went beyond the bounds of a legitimate argument in referring to the Arizona Supreme Court. He invited a response by the Deputy County Attorney. We do not condone the choice of language used by the Deputy County Attorney. The instruction was the law of the case even though given over his objection. We hold that the defense attorney opened the door and that the remarks of the Deputy County Attorney were not so far afield as to warrant a reversal under all of the facts and considering all of the instructions which were given in this case. See State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966).

We are fully aware of the right of a private citizen to be free from false arrest. Platt v. Greenwood, 50 Ariz. 158, 69 P.2d 1032 (1937). We are also aware of the many responsibilities placed upon our law enforcement officers; the public depends upon them for safety, and critical decisions must be made under conditions which cannot be classified as conditions of quiet, tranquility and extended reflection. The jury received instructions favorable to the defendant and we are not called upon to decide whether the Deputy County Attorney's objections to the instructions were well taken. The jury and the trial judge resolved the issues of guilt against the defendant.

■ Under all of the circumstances set forth in this record, we are not called upon to substitute our judgment for the judgment of the trial judge in his determination that the overall fact situation was one calling for a felony conviction rather than the exercise of judicial discretion to resolve this matter as a misdemeanor conviction.

Upon the issuance of the mandate in this matter, the Superior Court is directed to

take the action heretofore specified and this cause is affirmed as so modified.

DONOFRIO, J., concurs.

CAMERON, Chief Judge (dissenting).

I would agree that the 18-year-old defendant's alcoholic and completely unprovoked conduct leaves much to be desired. I do not agree, however, that his conduct is such as to compel a felony conviction, and under the authority of A.R.S. § 13–1717 I would reduce the sentence and punishment making the crime a misdemeanor rather than a felony as allowed by the statute, A.R.S. 13–541, under which the defendant was charged.

I am fully aware that the reduction of sentence under this statute (A.R.S. 13–1717) should be used with extreme caution. The trial court is generally considered to be in the best position to evaluate the possibilities for the defendant's rehabilitation and the sentence which should be imposed upon the defendant, and will not be modified unless it is excessive and results in an abuse of discretion. State v. Salinas, 95 Ariz. 62, 386 P.2d 790 (1963).

However, our Supreme Court has stated:

"According to modern legal thought reformation and rehabilitation of offenders rather than retribution are the important goals of criminal jurisprudence. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). To state this dominant objective is to say—borrowing the words of the late Dean Roscoe Pound—that 'criminal law [is] made a means to social ends * * *. [P]unishment is to be governed by its social end and is to be fixed with reference to the future rather than to the past.' I Pound, Jurisprudence, 134 (1959)." State v. Maberry, 93 Ariz. 306, 308, 380 P.2d 604, 605 (1963).

Since rehabilitation is the primary goal in sentencing, and considering the defendant's age, State v. Killian, 91 Ariz. 140, 370 P.2d

287 (1962), I would, upon the facts of this case, reduce the sentence to provide for a misdemeanor conviction rather than a felony conviction.