249 P.2d 946

**STATE v. ROTHE.**

No. 1025.

Supreme Court of Arizona.

Nov. 12, 1952.

Fred O. Wilson, Atty. Gen., and Alfred C. Marquez, Asst. Atty. Gen., for appellee.

Allen & David, of Tucson, for appellant.

STANFORD, Justice.

Harry Ronald Rothe, appellant, was found guilty by a jury of the charge of aggravated assault, a felony, and he appeals from the judgment of conviction and claims excessive sentence imposed thereon.

The facts show that while appellant was at his sister's house in Tucson, Arizona, he took his child, the daughter of the prosecutrix, Mrs. Lydia Rothe and together with his own mother started to drive away, asserting that he was tired of the prosecutrix' tantrums and was going to take the child and leave. Before driving away, the appellant twice attempted to remove the prosecutrix from the running board of the car on which she had placed herself in an effort to remove the child from the car. Finally the appellant drove away with the prosecutrix clinging to the right hand side of the car, and she remained there during the drive to the house of Prucnal's some three or four miles distant. Appellant testified that at the home of Prucnal's he removed the prosecutrix from the running board of the car and placed her over the fence and into the yard of said residence, while other witnesses, including the prosecutrix, testified that he slapped her several times on the face and then threw her over the fence with great force and violence.

The treating of the "Legal Propositions Relied Upon", submitted by the appellant, will we think, sufficiently dispose of the numerous assignments of error.

We will first consider the appellant's contention that the trial court erred in excluding Defendant's Exhibit No. 1 for Identification, which is a letter written by the prosecutrix to a girl friend on the date of and prior to the alleged aggravated assault. In this letter the prosecutrix called her husband, the defendant, an animal, and admitted that she intended to return to Guatemala and obtain a divorce as soon as her baby was stronger. She said her husband knew nothing of her plans to get a divorce. She told her friend that after the divorce she planned to take a trip to "North Africa 'Casablanca' where my dearest Phil is now!" In another part of the letter she referred to Phil, saying:

"I have my Phil and he is sending me the money to go with him. Is not that a big love? Oh Jean he is wonderful!"

Prior to offering this letter in evidence, the counsel for appellant cross-examined the prosecutrix as follows:

"Q. Now, the fact of the matter is, Mrs. Rothe, that you were no longer interested in Harry Rothe at all on July 8, 1951, were you? A. If I was interested in him after July 8th?

"Q. No, on July 8th, before you claim he assaulted you. A. If he was my husband, I was interested before, but not after he beat me like that; he take my baby.

\*   \*   \*   \*   \*   \*

"Q. Before anything happened on July 8th and for some theretofore, you had been in love with and were intending to marry a man by the name of Phil? (At this point counsel for State objected to question and trial court overruled his objection) A. I know you can't marry anyone. I say that because I was very jealous. He left my family and he went to see a woman. He come back home with lipstick in the pocket. He was with the prostitute, if you permit me the sentence. That is what I have to hear every day. Forgive talking so dirty.

"Q. That still doesn't answer my question. You were in love with a man by the name of Phil? A. I wasn't in love; he was in love with me.

"Q. You were intending to marry him before July— A. No; I no love him; don't love nobody.

\*   \*   \*   \*   \*   \*

"Q. Do you deny that you were intending to marry Phil prior to July 8th? A. I have no intention to marry anyone. I say that because I was very jealous, because my husband hurt my pride constantly. I have to.

\*   \*   \*   \*   \*   \*

"Q. Before any trouble arose between you and Harry on the 8th, it was your intention to go to South Africa to marry Phil? A. I go to Guatemala with my father and live there a long time and marry again."

■■ The letter was offered in evidence for the purpose of impeaching the prosecutrix as to the matters referred to above which were brought out on cross-examination and further to show her animosity toward defendant. In allowing the appellant to cross-examine the prosecutrix on the matters mentioned above, the trial court overruled the objections of the State's attorney that these matters were immaterial and collateral. We quote from the record rulings of the trial court on these objections:

"The Court: 'Mr. Castro, it is always proper to ask the witness as to her likes, dislikes of a third person against whom they are testifying. The objection is overruled.'

\* \* \* \* \* \*

"The Court: 'It is to attack the credibility of the witness, her attitude, differences and whether there is a motive for testifying against her husband. Those matters are always proper.'

\* \* \* \* \* \*

"The Court: 'I said a while ago that any witness taking the stand, subjected to cross-examination, may be interrogated as to their attitude, likes and dislikes or differences with any persons against whom they they are testifying. That is the rule of evidence that is too wellknown for anybody not to know about it who is practicing law. Anybody who takes the stand, you have a right to cross-examine as to whether or not they had difficulties with the party against whom they are testifying.' "

We find no error in these pronouncements as they are correct statements of the law of evidence. The trouble is the court erred in their application.

At the time the letter mentioned herein was offered by the appellant in evidence, the trial court excluded it on the grounds that it was "immaterial and irrelevant."

The question presented for our determination is whether this letter was properly excluded by the trial court, and if not, did such ruling constitute reversible error?

It is a well-known rule of law that a cross-examiner should be given great latitude in his questions which seek to impeach an adverse witness being examined. It is always proper to inquire as to the motive of the adverse witness in testifying, and to show any matter which bears on the credibility of that witness. Nowhere is this better established than in the case of Arnold v. State, 100 Tex.Cr.R. 387, 272 S. W. 798, in which the Texas court said:

" * * * The motives which operate upon the mind of a witness when he testifies are never regarded as immate-

rial or irrelevant, and it has always been the rule that the adverse party may prove declarations and acts of a witness which tend to show bias, interest, prejudice, or any other mental state or status which, fairly construed, might tend to affect his credibility." (Citing cases.)

The Texas court held that it was reversible error for the trial court to not allow the defense to go into the matter of motive on cross-examination. In accord with this decision is the case of Cryer v. State, 101 Tex.Cr.R. 637, 276 S.W. 925.

 If the defendant is to be allowed to inquire on cross-examination into possible motives of the adverse witness in testifying then it seems to logically follow that the defendant be allowed to put contrary statements of said witness in evidence for the purpose of impeaching such adverse witness.

This court, in Fuller v. State, 23 Ariz. 489, 205 P. 324, 325, said:

"The party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility * * *". (Citing cases.)

We feel the jury should have been allowed to consider the contents of the letter in determining what weight they would give to the testimony of the prosecutrix.

We hold that the trial court erred in excluding this letter, and that its ruling was highly prejudicial to the rights of appellant.

In view of this holding, we see no occasion to consider the other assignments of error advanced by the appellant at this time.

The judgment of conviction is reversed and the case remanded to the trial court for a new trial.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.