436 P.2d 629

**STATE of Arizona, Appellee,**

v.

**William J. VERES, Appellant.**

**No. I CA–CR I02.**

Court of Appeals of Arizona.

Jan. 29, 1968.

Rehearing Denied Feb. 27, 1968.
Review Denied April 11, 1968.

Darrell F. Smith, Atty. Gen., by LeRoy R. Park, Asst. Atty. Gen., for appellee.

O'Reilly, Pollock & Pizzo, by Gerald A. Pollock, Charles S. Pizzo, Phoenix, for appellant.

STEVENS, Judge.

This appeal relates to a judgment of guilt as to two counts, each charging the uttering and passing of an insufficient funds check, and to the sentence in connection therewith. The defendant was initially granted probation and more than two years later the probation was revoked whereupon he was sentenced. The appeal presents a question as to the timeliness of the appeal from the judgment of guilt. There are the usual questions relating to an appeal after a trial and the unusual question relating to the right of the Superior Court to dismiss the first appeal.

On 29 December 1962, the defendant entered into a lease arrangement for a trailer making his deposit thereon by check. On 2 January 1963, he entered into a lease arrangement with the same party for a truck-tractor to pull the trailer, again making his deposit by check. The checks were presented to the bank and were not honored due to insufficient funds. The vehicles were not returned. On 30 January 1963 the defendant was charged with a two

count complaint in the Justice Court, one count charging grand theft (embezzlement) of the trailer and one count charging grand theft (embezzlement) of the truck-tractor. On the same day in the same Justice Court, he was charged with another two count complaint, each count relating to one of the checks. All counts were alleged to be felonies. The applicable law in relation to insufficient funds checks was then set forth in A.R.S. Section 13–316, as amended by Chapter 109 of the Laws of 1960. This section has been further amended.

At all times material to this appeal the defendant was represented by counsel of his own choice. They will be designated as attorney no. 1, attorney no. 2 and attorney no. 3. Attorney no. 1 appeared before the Justice of the Peace with the defendant and the preliminary hearing was waived as to all four counts. The defendant was bound over and released on bond. On 1 March 1963, Information No. 41696 was filed in the Superior Court charging the two counts of grand theft (embezzlement) and Information No. 41697 was filed charging the two check counts. Pleas of not guilty were entered. The sixty day trial period was waived. The defendant was continued on bond. The two criminal causes were consolidated for trial. We are not concerned in this opinion with the grand theft (embezzlement) charges in view of the fact that the jury returned not guilty verdicts with reference to both of these counts when the matter eventually came for trial.

The consolidated causes were first called for trial on Friday, 24 May 1963. The Superior Court Judge then presiding was a Judge other than Judge Stanford. The minutes of 24 May 1963 recite, in part:

"2:25 p. m. This matter having been regularly set for trial and called for trial at this time, and the defendant having failed to appear, it is ordered forfeiting defendant's bail. * * * Counsel stipulate that a jury may be chosen at this time.

\*    \*    \*    \*    \*    \*

"Counsel exercise their pre-emptory challenges, the jury list is stricken and the following twelve persons were duly selected and sworn to act as trial jurors in this cause: * * *

"The jury is admonished and Court stands at recess until 9:30 A.M. Tuesday May 28, 1963."

As ordered, the consolidated causes were again called on 28 May 1963 and the minutes for that date recite, in part:

"* * * Defense counsel moves for motion to continue on the grounds and reasons defendant is not present and whereabouts of defendant is unknown to defense counsel.

"State objects to continuance.

"ORDER declaring mis-trial in this case and referring the case to the Court Administrator for further disposition and setting.

 *   *   *   *   *   *

"State objects to granting of mis-trial.

 *   *   *   *   *   *

"Court has declared a mis-trial. Jury is discharged."

The consolidated causes were next called for trial on 27 December 1963 after one continuance had been granted at the request of the State and one had been granted at the request of the defendant. The defendant testified during this two day trial. The jury returned verdicts finding the defendant guilty as to both check counts and not guilty as to both grand theft (embezzlement) counts. The minute entry judgment of guilt being controlling, State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962); State v. Chance, 4 Ariz.App. 38, 417 P.2d 551 (1966); State v. Arce, 6 Ariz.App. 241, 431 P.2d 681 (1967), we quote the minutes of 15 January 1964:

"IT IS ORDERED denying Motion for New Trial IT IS THE JUDGMENT of this Court that you, Wm. J. Veres, are guilty of the crime of Drawing Check on Insufficient Funds Account, Two Counts."

The same minutes disclose that the defendant was placed on probation for a five year period.

A notice of appeal was timely filed. On 31 March 1965, a written motion to dismiss the appeal was filed in the Superior Court by attorney no. 1, who had represented the defendant at all times up to this point in the proceeding, and a different Superior Court Judge signed the order of dismissal.

In the spring of 1966, Judge Stanford instituted proceedings in relation to a revocation of probation. At these proceedings the defendant was represented by attorney no. 2. On 11 May 1966, the issues were resolved against the defendant, his probation was revoked and the minutes reflect the following sentence:

"IT IS THE SENTENCE OF THIS COURT that you, WILLIAM J. VERES, be imprisoned in the Arizona State Prison at Florence, Arizona, for a period of not less than two (2) years nor more than two and one-half (2½) years, commencing this date."

On the following day, attorney no. 3, who continues to represent the defendant in connection with this appeal, filed a notice of appeal, in part, as follows:

"COMES NOW the Defendant, WILLIAM JAMES VERES, and gives this Notice of Appeal from the judgment of guilty and from the conviction in this cause, from an order denying a motion for new trial, and from an illegal and excessive sentence."

## WAS THE FIRST APPEAL PROPERLY DISMISSED?

The defendant urges that he did not consent to the dismissal of the first appeal. The record does not contain any proof that attorney no. 1 acted improperly.

The defendant urges that there was no jurisdiction in the Superior Court to dismiss the appeal. The general rule is that once an appeal has been perfected, the Superior Court loses jurisdiction to enter any orders except those in aid of the appeal. There are exceptions and we hold that

under the circumstances hereinafter set forth, the Superior Court did have jurisdiction to dismiss the appeal. The record before us does not disclose that the 1964 appeal was ever lodged in the Arizona Supreme Court. In 1964 the Court of Appeals had not come into being. The Court of Appeals does not take judicial notice of Arizona Supreme Court records of the nature in question. The reporter's transcript of the 1963 trial was not filed with the Clerk of the Superior Court until 24 June 1966, this being after the filing of the 1966 notice of appeal. Criminal Rule 360, 17 A.R.S. provides, in part:

"Rule 360. Record on appeal

"A. When an appeal is taken, the clerk shall, within five days after notice of appeal is filed, assemble and attach together the record on appeal, which, unless otherwise specified, shall consist of a certified copy of the following:

\*   \*   \*   \*   \*   \*

"7. Reporter's transcript when filed, or such portion thereof as either party specifies."

The Rules of Civil Procedure, 16 A.R.S., have been applied in criminal cases in addition to the express reference to the Civil Rules which is contained in Criminal Rule 272, this rule reading as follows:

"Rule 272. Evidence and instructions

"The law of evidence and the law relating to instructions to the jury in civil actions shall apply to criminal actions except as otherwise provided."

Illustrative of the application of Civil Rules in criminal cases are the cases of State v. Lopez, 96 Ariz. 169 at 172, 393 P.2d 263, at 265 (1964), and Campbell v. Thurman, 96 Ariz. 212 at 214, 393 P.2d 906, at 908 (1964). In our opinion it was appropriate to apply Civil Rule 73 in resolving the question now before us. This rule, in part, provides:

"73(d) When perfected.

"\*  \*  \* If an appeal has not been docketed in the supreme court, the parties, with the approval of the superior court, may dismiss the appeal by stipulation filed in that court, or that court may dismiss the appeal upon motion and notice by the appellant.

"73(d) When perfected.

"\*  \*  \* The appeal is perfected by filing the notice of appeal."

The appeal not having been docketed by the Supreme Court, the Superior Court had jurisdiction to dismiss the appeal.

## DOUBLE JEOPARDY

In the appeal now before this Court the defendant, for the first time, urges that jeopardy attached in May 1963 and that the December 1963 trial placed the defendant in double jeopardy. We hold that this issue may not be effectively raised for the first time in connection with the current appeal. Article 2, Section 10, Arizona Constitution, A.R.S., is as follows:

"§ 10. Self-incrimination; double jeopardy

"Section 10. No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

The Arizona Supreme Court has several times considered the issue of double jeopardy, three of the cases being: State v. Morales, 90 Ariz. 11, 363 P.2d 606 (1961); State v. Burruell, 98 Ariz. 37, 401 P.2d 733 (1965); and Dowthard. In Morales, the Supreme Court observed (90 Ariz. at page 12, 363 P.2d at page 606):

"The record does not disclose that appellant presented any claim of double jeopardy to the Superior Court of Santa Cruz County in which he was sentenced."

We recognize that in Morales, the issue was one of habeas corpus. In Burruell, a timely motion raising the issue of double jeopardy was filed in the Superior Court. The State had made a motion for a mistrial based upon conduct of the attorney for the defendant. The Supreme Court did not sustain the plea of double jeopardy until after it had examined the record to determine whether the trial court was correct in its ruling. In holding that the trial court was not correct in holding an absence of double jeop-

ardy, the Supreme Court stated (98 Ariz. at page 44, 401 P.2d at page 738):

> (the trial) "was stopped by the court's ruling of mistrial, which was not based upon proper 'legal reason' or sufficient 'exceptional circumstances.' The second trial, on April 13, 1964, had the legal effect of placing defendant in double jeopardy."

In Dowthard the issue was also timely raised in the Superior Court.

The Rules of Criminal Procedure treat the subject of double jeopardy. We quote from the rules as follows:

> "RULE 169. Motion to quash; grounds
>
> "A. A motion to quash the indictment or information shall be available only on one or more of the following grounds. In the case of:
>
> * * * * * *
>
> "(f) That the defendant has been * * * in jeopardy of conviction * * * of the offense charged."

> "Rule 171. Contents of motion to quash when based on former conviction or acquittal or former jeopardy, pardon or immunity
>
> "A. If the ground of the motion to quash is * * * former jeopardy of conviction * * * of the same offense, the motion shall state the name under which the defendant was * * * in jeopardy of conviction * * * the name of the court in which he was * * * in jeopardy * * * and the date and place of such * * * jeopardy * *."

> "Rule 177. Failure to move to quash as waiver of certain objections or defenses; exceptions
>
> "If the defendant does not move to quash the indictment or information before or at the time he pleads thereto, he shall be taken to have waived all objections or defenses which are grounds for a motion to quash, except those which are also grounds for a motion in arrest of judgment, and except those which are also pleas authorized by these Rules. If the defendant learns after he has pleaded or

has moved to quash on some other ground that the offense with which he is then charged is an offense for which he has been pardoned, or of which he has been convicted or acquitted or in jeopardy, or for which he has been granted immunity, the court may in its discretion entertain at any time before verdict a motion to quash on the ground of such * * * jeopardy * * *."

Criminal Rule 316 relates to motions in arrest of judgment and the rule does not include double jeopardy as a grounds for the motion.

■ In the case of State v. Superior Court of Pima County, decided 15 December 1967, Ariz., 435 P.2d 485, the Supreme Court had under consideration the effect of the failure to timely file a motion to quash. While the issues were different, the holding applies in the case now under consideration. In the case just decided, the Supreme Court stated:

> " * * * A defendant should not be permitted to take his chance on one trial, be content with the verdict of 'not guilty,' but if the jury returned a verdict of guilty then for first time raise the question. It is for this reason that rules of procedure have been meticulously set forth by which an objection may be made either to an information or an indictment.
>
> * * * * * *
>
> "We accordingly hold that, under facts such as in the instant case, a motion to quash must be made before a plea, and cannot thereafter be made except if the court in its discretion permits the withdrawal of the plea for that purpose."

We hold that the defendant may not raise the issue of double jeopardy for the first time on appeal.

■ There are additional reasons in support of this ruling in the case now under consideration. In the language of Burruell, we find both "legal reason" and "exceptional circumstances" which merit a decision that the procedures of 24 and 28 May

1963 did not place the defendant in jeopardy. The defendant was the moving party. The order, in effect, granted his motion for continuance. It would have been unrealistic to hold the impaneled jury intact until the defendant appeared for trial at some unknown future date. The trial judge may have been of the opinion that he could not discharge the jury if he granted a "continuance" and that it was necessary to grant a "mistrial" before the jury could be discharged. Regardless of the use of a particular term, the effect was the same. In May 1963, the defendant could have been tried in absentia if the trial judge so ordered. Criminal Rule 231, provides, in part:

"Rule 231. Proceedings at which presence of defendant required in felony prosecution; exception

"A. In a prosecution for a felony the defendant shall be present:

\*　　\*　　\*　　\*　　\*　　\*

"3. At the calling, examination, challenging, impaneling and swearing of the jury.

"4. At all proceedings before the court when the jury is present.

"5. When evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury.

\*　　\*　　\*　　\*　　\*　　\*

"7. At the rendition of the verdict.

"B. If the defendant is voluntarily absent, the proceedings provided by this Rule, except those in paragraphs 1 and 2 of subsection A, may be had in his absence if the court so orders."

Criminal Rule 235 provides, in part:

"Rule 235. Presence of defendant at pronouncement of sentence

"The defendant shall be present when a sentence of death or imprisonment is pronounced and if such sentence is pronounced in his absence, he shall be resentenced when his presence is secured. \* \* \*"

Had the trial judge required the trial to proceed, it is conceivable that the defendant could have been found guilty on all four counts. The grand theft (embezzlement) counts carried a maximum of 10 years each and the check counts carried a maximum of 5 years each, or a potential total of 30 years. Under these circumstances we find both "legal reason" and "exceptional circumstances" which were resolved in favor of the defendant, do not constitute jeopardy in May of 1963.

### THIS APPEAL

Courts exercising · appellate jurisdiction may review their jurisdiction to entertain a specific appeal even though the issue is not raised. In this case we have examined our jurisdiction to review the judgment of guilt and its preceding trial as well as our jurisdiction to review the sentence, A.R.S. Section 13–1657, subsec. A(1) authorizes the trial court to "suspend the imposing of sentence" and to "place such person on probation". This authority was exercised on 15 January 1964. Although the judgment of guilt was entered on that date, the defendant was not sentenced until 1966. A.R.S. Section 13–1713 is as follows:

"§ 13–1713. Appeal by defendant

"An appeal may be taken by the defendant only from:

"1. A final judgment of conviction.

"2. An order denying a motion for a new trial or denying a motion for an arrest of judgment, or from an order made after judgment affecting the substantial rights of the party.

"3. A sentence on the grounds that it is illegal or excessive."

Criminal Rule 348, subd. A, is as follows:

"An appeal by the defendant may be taken only within sixty days after entry of the judgment or sentence appealed from, except that an appeal from both judgment and sentence may be taken within sixty days after the sentence is entered."

Effective 1 April 1940, the forerunner of our present Criminal Rules was adopted under the title "Code of Criminal Procedure". The preface to the Code of Criminal Procedure states that it is "based upon the model code of criminal procedure prepared and approved by the American Law Institute with a few modifications to suit local conditions." Prior thereto the matter of appeal was governed by Section 5138 of the 1928 Revised Code of Arizona which read as follows:

"§ 5138. Notice of appeal; time limit on appeal. An appeal to the supreme court is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same, and must be taken within sixty days after the rendition of the judgment or the making of the order."

Prior to the case of State v. Heron, 92 Ariz. 114, 374 P.2d 871 (1962), it was held [see Brooks v. State, 51 Ariz. 544, 78 P.2d 498 (1938)] that one who was adjudged guilty and accepted probation could not appeal the judgment of guilt. Heron, without citing Criminal Rule 348, held that a defendant could appeal the judgment of guilt even though he had accepted probation. In Heron, the Arizona Supreme Court stated:

"We hold, therefore, that the judgment of guilty provided for in Rules 321, 322 and 324, Rules of Criminal Procedure, 17 A.R.S. is a final judgment from which an appeal may be taken even though the sentence or the imposition of sentence may have been suspended. The defendant must, of course, file a timely notice of appeal and abide by the other procedures set out for the prosecution of appeals. He may not take the benefit of his probation and hold off on his appeal until, for instance, his probation is revoked."

This Court quoted the foregoing portion of Heron in State v. Byrd, 2 Ariz.App. 304, 408 P.2d 237 (1965) and relying thereon, dismissed an appeal from a judgment of guilt which appeal was entered after the revocation of probation. We must re-examine our holding in Byrd.

■ We shared the view expressed in Byrd as being the general belief of the bar and bench of Arizona. However, the following language in Criminal Rule 348:

" * * * except that an appeal from both judgment and sentence may be taken within sixty days after the sentence is entered"

causes us much concern. We now believe that the following language contained in Heron was not necessary to that opinion:

"He may not take the benefit of his probation and hold off on his appeal until, for instance, his probation is revoked."

It is our opinion that the portion of Criminal Rule 348 quoted immediately above recognizes the right to appeal the merits of the judgment of guilt if a timely appeal is taken after revocation of probation even though no appeal had been taken from the judgment of guilt within sixty days from the date of the entry of the judgment of guilt. We expressly overrule Byrd.

## MERITS OF THE APPEAL

■ We must consider the evidence in the light most favorable to sustaining the jury verdicts and the judgment of guilt. State v. Villegas, 101 Ariz. 465, 420 P.2d 940 (1966); State v. Valenzuela, 5 Ariz. App. 225, 425 P.2d 127 (1967).

The defendant urges error in relation to certain questions asked on his cross-examination, the questions seeking to ascertain whether he disclosed the location of the trailer and the location of the truck-tractor to the law enforcement officials. The defendant was found not guilty with reference to the counts which were concerned with this area of interrogation and we find it not necessary to rule on the defendant's position in relation to this matter. Further, we are unable to find any prejudice to the defendant by the questions asked.

## EVIDENCE AS TO OTHER CHECKS

The defendant and his wife maintained a joint checking account in the bank office on which the two checks were drawn, one on 29 December 1962 and the other on 2 January 1963. These checks were in the sum of $35.00 and $65.00 respectively. Over the objection of the defendant, the bank records of the account from 9 November 1962 to 29 January 1963 were introduced in evidence. These records consist of four separate sheets which were received as a single exhibit. The respective dates covered by each separate sheet were: First Sheet, 9 November 1962 to 5 December 1962; Second Sheet, 7 December 1962 to 21 December 1962; Third Sheet, 24 December 1962 to 4 January 1963; and the Fourth Sheet, 7 January 1963 to 29 January 1963. The records disclosed three overdrafts in November; an overdraft on 5 December and one on each of the following dates, namely: 24, 27, 28 and 31 December as well as 2, 3, 4, 7, 8, 9, 10, 11, 15, 16, 17 and 29 January. On 20 December 1962 the account showed a credit balance of $35.95. Between that date and 16 January 1963 there were no deposits to the account. The first credit balance in the account appears after a deposit made on 18 January.

The record of the bank account was introduced based upon the testimony of a bank official who testified as to the overdrafts and that the account showed charges for the presentation of insufficient funds checks. In his testimony he identified the entries making this disclosure. Sheet One contains six such entries; Sheet Three contains 23 such entries and Sheet Four contains 13 such entries.

■ The defendant objected to the receipt of records which indicated that there were insufficient funds checks other than the two in question. It is well established in Arizona that the writing of insufficient funds checks both before and after the checks which are the subject of the criminal prosecution may be shown. State v. Day-

mus, 90 Ariz. 294, 367 P.2d 647 (1961), is the most recent Arizona Supreme Court case which discusses these problems extensively. We do not find it necessary to quote extensively from this case. We find an absence of error in the matter of the proof of insufficient funds checks both before and after the date of the checks in question.

## USE OF BANK RECORDS

■ The defendant further objected to the use of the bank records. The bank official who testified identified himself as an assistant cashier in charge of operations and bank procedures at the branch in question. He further testified that the records which he produced and which were introduced in evidence were records of the account of William J. or Dolores Veres. When questioned with reference to the manner of the preparation of the records he testified that he did not prepare them, that "it is done by automatic machine", that he did not know "the mechanical operation aspects of the machine", that another bank employee at another bank office was in charge of that department and that the witness's only knowledge was his access to the records. The witness's testimony indicated that the checks and deposits are "encoded by machines". The State relied upon the "Business Records Rule". This rule, if applicable, would be applicable pursuant to Criminal Rule 272 heretofore quoted in this opinion, which rule relates to the application of civil rules of evidence in criminal cases. The Business Records Rule is found in both A.R.S. § 12–2262 and in Civil Rule 44, 16 A.R.S. Civil Rule 44(q) is as follows:

"44(q) Proof of business record; definition; as evidence. 1. The term 'business' includes every kind of business, profession, occupation, calling or operation of institutions, whether or not carried on for profit.

"2. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other

qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

We held in Snyder v. Beers, 1 Ariz.App. 497, 405 P.2d 288 (1965), that not every entry in a business record is automatically admissible. All of the entries in the exhibit now in question related to the account of the defendant and do not fall within the Snyder opinion. In Builders Supply Corp. v. Shipley, 86 Ariz. 153, 341 P.2d 940 (1959), the Arizona Supreme Court recognized that a wide discretion rests in the trial court in the admission of business records. The rule itself so provides. The degree of care used by the State in laying its foundation in the use of bank records in Daymus was not followed in the case now under consideration. We have under consideration our first ruling relative to records prepared by encoding machines as distinguished from the manual posting of records. Under the circumstances presented in the case now before us, we find an absence of an abuse of discretion by the trial judge in admitting the exhibit in evidence. This is especially true in the light of the defendant's testimony wherein he testified that he knew that his bank account was not in good condition, that at the time of the writing of the checks he had requested that the checks be not negotiated because the bank had asked the defendant to refrain from writing checks until the matter of his account had been straightened out, and that he had written checks to "cash" which were not honored. The person who received the checks in question refuted the defendant's testimony as to instructions that the checks be not negotiated. There was a conflict of testimony in this regard and it became the duty of the jury to resolve the conflict. Had the jury believed the defendant he would have been acquitted. State v. Zent, 92 Ariz. 334, 376 P.2d 861 (1962).

## "CREDIT" NOT DEFINED

The defendant urges fundamental error in that the trial court did not, on its own motion, instruct the jury as to the meaning of the word "credit". A.R.S. 13–316, at the time of the offense in question, read in part, as follows:

"A. A person who, for himself * * * wilfully with intent to defraud, makes, draws, utters or delivers to another person * * * a check * * * on a bank * * * for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he * * * does not have sufficient funds in, or credit with, such bank or depositary to meet the check * * * in full upon presentation, shall be punished as follows:

\*      \*      \*      \*      \*      \*

"B. The word 'credit' as used in this section shall be construed to be an arrangement or understanding with the bank or depositary for payment of the check or draft."

It is our recommendation in any trial relating to insufficient funds checks that the instructions to the jury contain a definition of the term "credit". In our opinion the evidence showed that the defendant knew that there was a lack of any credit. State v. DeVinney, 98 Ariz. 273, 403 P.2d 921 (1965). We find no error in the case now under consideration in relation to the failure to so instruct in that the evidence could not support a finding that the defendant had a credit arrangement with the bank.

We have reviewed the instructions given by the trial court and find them to be adequate.

## THE JUDGMENT OF GUILT

We find the judgment of guilt to be adequately set forth in the quoted minutes of 15 January 1964. We recommend, however, that in a criminal cause wherein there is more than one count that a defendant be separately adjudged guilty as to each count.

## SENTENCE

■ We find the sentence set forth in the quoted minutes of 11 May 1966 to have been adequately expressed. We recommend that where a defendant is being sentenced in relation to more than one count that the sentence with respect to each count be separately stated. In view of Criminal Rule 339, there can be no question that the sentences for the two counts ran concurrently. The sentence which was pronounced after the violation of the terms of probation and the revocation of probation, was well within the statutory maximum of five years for each of the two counts which could have been imposed consecutively rather than concurrently, and we find that the sentence was neither excessive nor illegal.

We have reviewed the several motions made during the trial and after judgment as well as the entire transcript. We have considered the several matters which were raised in the brief although the same are not expressly set forth in this opinion. From an overall consideration of this case, we find an absence of reversible error.

The judgments of guilt and the sentence are affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.