452 P.2d 534

**The STATE of Arizona, Appellee,**

**v.**

**Manuel Modesta CADENA, Appellant.**

**No. 1 CA–CR 176.**

Court of Appeals of Arizona.
March 27, 1969.

**DONOFRIO, Chief Judge.**

The defendant, Manuel Modesta Cadena, was originally charged with two crimes—obstructing justice, and assault with a deadly weapon—all of which arose out of an incident which occurred on February 10, 1967, in Phoenix, Arizona. At the close of the State's case, a motion to dismiss the charge of obstructing justice was granted. The jury was concerned only with the issue of assault with a deadly weapon.

The prosecution showed that a Phoenix police officer was summoned to a private residence in response to a family dispute call. In the residence the officer found that Cadena was unwanted and asked him to leave. He refused to do so and the officer arrested him. At this point the facts are sharply contested. The version of the police officer and that of the other eyewitnesses differs.

The officer testified that Cadena hit him in the face immediately after he was told that he was under arrest and, while they were in the kitchen, a fight ensued. The officer testified that during the fight he used his nightstick to defend himself. He further testified that he hit Cadena on the head only once, and then hit him several times on the shins. The officer also stated that during the fight he observed a kitchen knife in Cadena's hand and that Cadena was attempting to stab him with it. It was the officer's testimony that while he was acting in reasonable apprehension for his life, he shot Cadena in the stomach.

The other eyewitnesses, residents of the household, all testified that they never saw Cadena hit the police officer. They testified that Cadena's only acts were to attempt to ward off the blows directed at him by the officer when he was using his nightstick. None of the eyewitnesses saw the defendant with the kitchen knife in his hand, but several of them stated that they did see the officer pick up a knife near the defendant after the defendant was shot. All the eyewitnesses, other than the police

Gary K. Nelson, Atty. Gen., by Thomas M. Tuggle, Asst. Atty. Gen., for appellee.

Ross Anderson, Phoenix, for appellant.

officer, testified that there was no provocation for the officer's use of the nightstick or the gun.

## PROOF OF BIAS ON CROSS-EXAMINATION

At the trial the judge limited defendant's cross-examination of the police officer. The record in this regard was made in the nature of an offer of proof in limine. The defendant proposed certain questions in writing, approached the trial judge in the presence of the County Attorney, and stated that he would ask these questions of the witness as soon as he was put on the stand. Attached to the questions was an offer of proof. An opportunity was allowed the County Attorney to read the questions and make objections to them. The County Attorney did object and the court ruled in the prosecution's favor and made the offer of proof submitted a matter of record.

This offer of proof was to the effect that the officer had on prior occasions been involved in similar investigations which resulted in shootings, and in one instance the occupant of the home was killed. As a result of one of the occurrences a lawsuit was brought against the police officer and a departmental investigation of the police officer resulted. Defendant urges that it was the purpose of the questions offered to show motive and interest of the witness in securing a conviction against the defendant.

█ Generally it is inadmissible to show a prior bad act of a witness as a means of impeachment if such bad act has not resulted in a felony conviction. However, there is an exception to this rule where such evidence tends to show that the witness has a motive for his testimony. State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A. L.R.2d 1120 (1960), is an example of where the Supreme Court reversed a conviction when the trial court refused to permit cross-examination which showed that a witness was living in open and notorious cohabitation. The court in that case held:

"Evidence offered to impeach the credibility of a witness by showing that he

has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination whether such evidence also tends to prove that the witness has committed acts in violation of the law. * * *" 87 Ariz. at page 300, 350 P.2d at page 759.

The importance of this concept is pointed out by our Supreme Court in the case of State v. Vidalez, 89 Ariz. 215, 360 P.2d 224 (1961):

"It is a fundamental proposition of law that the jury is entitled to be apprised of any bias, prejudice or hostility which a particular witness may feel toward a party to a lawsuit or prosecution in order that the jury may better be able to evaluate the true worth of that witness' testimony. State v. Rothe, 74 Ariz. 382, 249 P.2d 946; State v. Deen, 69 Ariz. 188, 211 P.2d 460; State v. Guerrero, 58 Ariz. 421, 120 P.2d 798; and see Udall, Arizona Law of Evidence, Sec. 65, p. 95." 89 Ariz. at page 217, 360 P. 2d at page 225.

A good discussion of the competing considerations which must be taken into account when admitting evidence of prior bad acts can be found in State v. Taylor, 9 Ariz.App. 290, 451 P.2d 648, (filed March 13, 1969). In that case it was stated:

"One of the prime considerations to be taken into account—possible prejudice against the defendant to a criminal charge—is not present here. We have remaining two policy considerations to compete against the ascertainment of truth. One is the matter of time consumption and confusion of issues. (case cited) In view of the direct bearing that this examination would have upon a critical factual issue and the difficulty of obtaining any better proof of the elusive *factum probandum*—that is, state of mind of the complaining witness—this competing consideration does not weigh heavily.

"The other competing consideration is the discouragement to witnesses that

might result from permitting past misdeeds to be made public. (case cited) When the previous misconduct is offered, only for such disparaging effect as it may have on the general credibility of the witness, this consideration has controlling influence. (case cited) But, when the misconduct bears an inferential connection with a factual issue in the case, the consideration of the discomfiture of the witness must yield to the ascertainment of the truth, at least to the extent of permitting cross-examination, (case cited) and, if the inferential connection is sufficiently strong, to the extent of permitting independent evidence of the conduct. (case cited)"

■ This Court has just recently held that failure to permit proper inquiry into the motives of an adverse witness which would bear on the credibility of that witness, is reversible error. State v. Butler, 9 Ariz.App. 162, 450 P.2d 128 (1969). We feel that in the present case there was reversible error in failing to permit such testimony.

This appeal raises many issues. Since we find reversible error in one of the questions, we deem it unnecessary to discuss all the others, especially since the other questions may not arise in the same manner. We do, however, feel it sufficiently important to touch upon the admissibility of the hospital records as this question may arise again.

## HOSPITAL RECORDS

The defendant urges error in the trial court's ruling sustaining the objection of the County Attorney to the receipt of hospital records in evidence. It was the contention of defendant's counsel that defendant was acting merely to repulse an illegal use of force by the police officer and that evidence of a head wound, purportedly inflicted by the officer's nightstick, strengthened this contention. Defendant urges that the records were admissible under the Arizona business records rule. A.R.S. § 12-2262 and Rule 44(q) of the Rules of Civil Procedure, 16 A.R.S. These rules are made applicable pursuant to Criminal Rule 272, 17 A.R.S. Criminal Rule 272 relates to the application of the civil rules of evidence in criminal cases.

■ Under the general common law rule, excessive force used by an officer effecting an arrest may be countered lawfully. People v. Curtis, 74 Cal.Rptr. 713, 450 P.2d 33 (Cal.1969). In Arizona a person illegally arrested can resist arrest as long as he uses such force as is reasonably necessary, short of homicide. Dugan v. State, 54 Ariz. 247, 94 P.2d 873 (1939). It is considered unreasonable to inflict bodily harm to effect an arrest for a misdemeanor if there are other reasonable methods of effecting the arrest. A.R.S. § 13–1401; Harding v. State, 26 Ariz. 334, 225 P. 482 (1924).

■ We have read the reporter's transcript of the foundation for the identification of the records as business records. In our opinion a prima facie foundation was laid. There was no objection offered by the State as to an absence of foundation. In particular, the offered exhibit states, "suture laceration—scalp" and, "scalp laceration sutured by Dr. Laugharn". The objection offered by the State was one based upon materiality and relevancy. The hospital records showing the wound on the head of the accused were admissible as relevant and material. Evidence of the wound on the head of the defendant would have been helpful in assisting the jury in determining if in fact unreasonable force was used by the officer.

There was a conference between the court and counsel at the bench out of the hearing of the jury which was not reported at the time the exhibit was resisted. We express no opinion as to whether the entire hospital record under these circumstances comes within the business records rule. While there may be other valid objections to portions of the matters stated in the offered exhibit, none were urged. In our opinion it was error to exclude the hospital records on the basis of the objection found in the reporter's transcript. We express

no opinion as to whether in a retrial other objections may be made as to all or as to portions of the exhibit which would require a ruling favorable to the State.

■ The statute and rule (A.R.S. § 12–2262 and Rule 44(q)) were adopted from the Uniform Business Records as Evidence Act and have been applied to criminal cases. The law does not change the rules of competency or relevancy with respect to the recorded facts. It does not make that proof which is not proof, but merely provides a method of proof of an admissible act, condition or event. People v. Williams, 187 Cal.App.2d 355, 9 Cal.Rptr. 722 (1969); State v. Veres, 7 Ariz.App. 117, 436 P.2d 629 (1968).

Case reversed and remanded for further proceedings not inconsistent with this opinion.

CAMERON, J., concurs.

STEVENS, Judge (dissenting).

I regret that I am unable to concur with the majority of the Court. In my opinion the issues raised on the appeal and not discussed by the majority are not sufficient to warrant a reversal and I agree with the absence of discussion of these points.

The majority discuss the "proof of bias on cross-examination" and conclude that there was reversible error in this area of the trial. I cannot agree. On oral argument the appellant conceded that he had one specific event in mind, an event which occurred eighteen months before the occurrence which is before us on appeal. This time interval cannot be ascertained from the tendered questions or from the reporter's transcript. For aught that appeared to the trial judge, there was no time limitation and no way of determining the time interval involved and being but one, not specifically identified in the mind of counsel, the proposed questions were in the nature of cross-examination by innuendo. There was no suggestion that the subject matter of the proposed cross-examination related to the defendant, but only that it

related to the officer's responsibility in connection with another family fight. This type of law officer duty presents a most complex, challenging and unreasoning situation. If the officer fails to remove the offending party and serious bodily harm later occurs, a great hue and cry arises urging a failure of the law to protect the citizenry. If no crime has actually taken place in the presence of the officer and the circumstances are such that the officer cannot reasonably believe that a felony has just been committed and the officer then removes the offending party, there is often the cry of "false arrest" accompanied by resistence and the framework for the situation which we find in the record. Often the persons who seek the officer's protection, once the officer's mission has been accomplished, turn against the officer and in support of the one who now becomes "the loved one of the family circle".

Civil suits are easily filed. Good police procedures call for the investigation of serious incidents. The questions proposed do not concern themselves with the outcome of the civil litigation or with the outcome of the departmental investigation. Even if they had so concerned themselves, the subject matter would be of questionable admissibility. In my opinion, with the showing made at the oral argument before this Court, the thrust of the particular event was too remote.

In my opinion the most that can be said in favor of the position of the appellant is that the matters presented to the trial court were within an area calling for the exercise of judicial discretion and in my opinion there is no showing of an abuse of that discretion.

### HOSPITAL RECORDS

I concur with the majority on the basis of the record presented to us. I do not believe the ruling to have been so prejudicial as to require a reversal. In my opinion we should proceed very carefully in applying the business records rule in criminal cases.

I would affirm.